COMMONWEALTH *vs.* ROBERT S. MARTIN.

Worcester.  November 16, 1984. — December 26, 1984.

Present: GREANEY, C.J., SMITH, & FINE, JJ.

*Practice, Criminal,* Instructions to jury.  *Error,* Harmless.  *Evidence,* Absence of flight.

Although it was error for the judge at a criminal trial to deny the defendant's seasonable request for a jury instruction as to impeachment of a prosecution witness by his prior inconsistent statements, this error was harmless in view of the judge's other instructions explaining the standards for determining credibility and in view of defense counsel's forceful closing argument which brought the witness's inconsistencies to the jury's attention. [118-120]

A criminal defendant was not entitled to have the jury instructed that his failure to flee when approached by a police officer at the scene of an alleged breaking and entering indicated consciousness of innocence. [121-122, 123-124]

Discussion of the admissibility at a criminal trial of evidence that the defendand did not flee from police when he had an opportunity to do so. [122-123]

COMPLAINT received and sworn to in the Central Worcester Division of the District Court Department on June 27, 1983.

On appeal to the jury session the case was tried before *William Garbose,* J.

*Thomas C. Federico* for the defendant.

*Bradford S. Mauro,* Assistant District Attorney, for the Commonwealth.

GREANEY, C.J.  Upon his conviction by a jury in a District Court of breaking and entering in the nighttime with intent to commit a felony (G. L. c. 266, § 16), Martin was sentenced to a term of imprisonment at a house of correction. On appeal, Martin claims that the judge erred (1) in failing to give an instruction on the effect of impeachment by prior inconsistent

statements; and (2) in failing to give an instruction on "consciousness of innocence." Timely objections were preserved.[1]

1. The relevant background to the first issue may be summarized as follows. At trial, the prosecution's eyewitness, Leonard Peterson, testified that about midnight on June 26, 1983, he was driving by a convenience store in Worcester when he heard glass breaking. Peterson stated that he slowed down his automobile and observed Martin and another man holding a trash bag and pulling it out from a broken glass window at the store. (Two trash bags containing fifty-three cartons of cigarettes valued at $465 were later recovered by the police.) Peterson was impeached on cross-examination, first by his testimony at the bench trial that a "sharp noise" had drawn his attention to the store but that he could not distinguish what the noise was; and second, by his previous testimony that all that he had seen was a broken window and two people standing in front of the store. Peterson also testified on direct examination that he had observed the two plastic bags "being brought back by another police officer from around the corner of the store." On cross-examination, however, he was reminded by defense counsel that he had testified at the bench trial that he was not present when the bags were returned.

In closing argument, defense counsel pointed out that Peterson had "testified . . . that he heard glass breaking. Now, if he testified in another courtroom that he didn't know what that noise was, I submit to you that this is an inconsistent statement." Later in his argument, defense counsel questioned whether "we want to believe Mr. Peterson who says that at one time . . . he heard a window breaking and then at another time he said he didn't know what the noise was that he heard. Another

---

[1] Written requests for both instructions were seasonably filed by defense counsel prior to closing arguments but were not acted upon by the judge. At the conclusion of the charge, the judge refused to allow defense counsel to approach the bench while the jury were present. The judge did permit defense counsel to put his objections on the record after the jury had retired to consider their verdict. The judge's refusals to rule on the requested instructions and to consider objections to the charge before the jury retired were in violation of the requirements of Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979).

interesting point. He testified here today he saw Mr. Martin taking out a bag as he drove by. My last set of questions to him [was], 'When you testified before didn't you say that when you looked toward the window you just saw Mr. Martin standing there, and that's all you saw?' He said, 'Yes, that's what I said.' I submit to you that that's another prior inconsistent statement. He also testified that he remained there in that area and saw the police officers bring two plastic bags back. I asked him, 'Well, didn't you testify in another time that you didn't see the police officer come back with any bags?' And he said, 'Yes, I did testify to that earlier.' So I submit to you that [those were] three inconsistent statements made by this man." Defense counsel also pointed out that a police officer had testified that the hole in the window was too small for Martin to have fit through but "we have Mr. Peterson for whatever reasons, saying that he saw this man doing something which was physically impossible for him to do." For his part, the prosecutor asked the jury to consider whether Peterson's testimony appeared credible. The prosecutor pointed out, "[W]hy wouldn't he tell you the truth? He doesn't even know the defendant." He went on to refer to the conflicts between Peterson's prior testimony and his testimony before the jury without attempting to explain them, finally urging the jury to find that Peterson was doing his job as a citizen in reporting the crime and that his testimony was truthful.

As previously noted, the judge, although seasonably requested by defense counsel, gave no instruction to the jury about the effect of impeachment by means of prior inconsistent statements. However, the judge did inform the jury that "in a criminal case, such inferences as a jury may draw must be based upon facts established beyond a reasonable doubt by trustworthy and credible evidence." The judge also gave the instructions, set forth in the footnote, on measuring the credibility of witnesses.[2]

---

[2] "Now, because you are the sole judges of the facts, in order to find the truth, it necessarily follows that you are the sole judges of the credibility of the witnesses.

"In determining the credit that you will give a witness and the weight and value you will attached to his testimony, take the following into consid-

It was error for the judge not to charge on the evidentiary effect of prior inconsistent statements. See *Commonwealth* v. *Costa,* 354 Mass. 757 (1968). Even apart from the requested instruction, the judge had the duty to state the applicable law to the jury. *Commonwealth* v. *Corcione,* 364 Mass. 611, 618 (1974). In the circumstances, however, the error was harmless. The closing argument of defense counsel brought to the jury's attention, in a forceful and direct manner, that Peterson's testimony was "at best but one of two or more inconsistent tales authored by him from time to time." Liacos, Massachusetts Evidence 141 (5th ed. 1981). The judge's instructions on the role of trustworthy and credible evidence as a prerequisite to accurate fact-finding, and his explanation of the standards for determining credibility, served to focus the jury, in light of the testimony and final arguments of counsel, upon the credibility of Peterson's trial testimony as the central issue. Moreover, by reason of the omission of the requested instruction the defendant acquired a tactical advantage which he was otherwise not entitled to, namely possible jury consideration of the prior inconsistent statements of the crucial prosecution witness for their substantive truth. That the jury did not do so does not turn harmless error into reversible error. We can say with assurance that the judge's error could not have influenced the jury in reaching their verdict.[3] See *Commonwealth* v. *Peruzzi,* 15 Mass. App. Ct. 437, 445 (1983).

---

eration: The conduct and appearance of the witness on the stand; the interest of the witness, if any, in the result of the trial; the motive of the witness in testifying, the probability or the improbability of the witness' statement; the opportunity that the witness had to observe or to be informed as to matters which such witness is testifying; and lastly, the inclination of the witness to speak the truth or otherwise as to matters within the knowledge of such witness.

"You should take all these matters into consideration with all the facts and circumstances in the case given in evidence. It is within your province to give each witness such credit and the testimony of each witness such weight and value as you may determine."

These instructions incorporate most of the principles in Model Jury Instruction of the District Court Department 2.07 (1980).

[3] To the question of when omission of a limiting instruction on the effect of prior inconsistent statements might be reversible error, we mention two

2.  There was evidence that a police officer driving past the scene observed Martin and a woman standing in front of the store and a second man crossing the street in a direction away from the store. As the officer approached the store to investigate, Peterson stopped him and talked to him. The officer parked his cruiser and approached Martin, who "did not run". The officer questioned Martin about the hole in the window and the condition of the inside of the store, which was seen by the officer to contain the trash bags full of cigarettes and which was by him described as a "mess." Martin was informed by the officer that there had been a witness to the incident. Martin denied any responsibility and claimed that he had seen "some kid in a football shirt run away with the bag." The officer noted in his report, which was admitted in evidence, that Martin "did not give me a hard time" during the questioning at the scene.

The foregoing evidence led defense counsel to request the instruction set forth in the footnote on what he referred to as "consciousness of innocence."[4] The requested instruction

---

possible examples: (1) when the circumstances of the trial, particularly the final arguments and charge, fail to focus the jury on the importance of their assessment of the credibility of a crucial witness to their determination of guilt or innocence, or (2) when the defendant suffers a disadvantage as a result of impeachment of himself or one of his witnesses by prior inconsistent statements which by reason of the lack of the limiting instruction allows the impeaching testimony to be used for substantive purposes.

[4] "CONSCIOUSNESS OF INNOCENCE

"Evidence has been introduced in this case on the question of whether the defendant displayed a so-called consciousness of innocence. . . [t]he lack of flight . . . by a person after a crime has allegedly been committed, or after he has been accused. If you find that Mr. Martin, prior to being arrested, had a significant opportunity to flee and passed up that opportunity, then you may find that Mr. Martin's behavior indicated a "consciousness of innocence" — namely, that Mr. Martin evidently thought he had committed no crime.

"You may consider the lack of flight . . . as one circumstance tending to show feelings of innocence, and you may also consider feelings of innocence as evidence tending to show actual innocence. You should consider and weigh evidence of the defendant's lack of flight or concealment in connection with all of the other evidence in the case and give to it such weight as in your judgment it is fairly entitled to receive."

tracks, with an appropriate change in wording, a once commonly used instruction on inferring consciousness of guilt from flight.[5] The whole question of the probative value of evidence of flight was discussed at length in *Commonwealth* v. *Toney,* 385 Mass. 575, 584-585 (1982). Such evidence was characterized in *Toney* (at 585) as "equivocal [in] nature," and, in general, circumspection was urged with respect to jury instructions on the topic. *Id.* at 584-585.

All of the problems inherent in the admission of evidence of flight as evincing consciousness of guilt, and more, are present in the admission of evidence of the absence of flight as demonstrating consciousness of innocence. The primary battle concerning evidence of the absence of flight has been fought over whether the evidence ought to be admitted at all. Representative of the reasoning of many jurisdictions which refuse admission is an early California decision, *People* v. *Montgomery,* 53 Cal. 576 (1879). In *Montgomery,* the defendant sought to prove, as circumstantial evidence of innocence, that while confined in jail awaiting trial he had an opportunity to escape but declined to do so. The court in *Montgomery* held that evidence that a defendant did not flee when he had the chance was of little value because there are many plausible reasons why a guilty person might also refrain from flight. Said the court (at 577-578): "He may very naturally have been deterred from making an effort to escape from a fear that he would be recaptured, and that his fruitless attempt to escape would be evidence of guilt; or he may have felt so strong a confidence of his acquittal, for want of the requisite proof of his guilt, that he deemed it unnecessary to flee." California has recently reaffirmed the holding in *Montgomery,* expanding upon the reasons stated in that case for exclusion of the evidence by adding that the probative value of such evidence is outweighed by its tendency to cause prejudice, confuse the issues

---

[5] The present District Court recommended instruction on consciousness of guilt is contained in Model Jury Instruction of the District Court Department 4.12 (1982), which was revised to reflect the recommendations in *Commonwealth* v. *Toney,* 385 Mass. 575 (1982). The 1980 version of 4.12 appears to be the one from which the instruction in this case was adapted.

and mislead the jury. *People* v. *Green,* 27 Cal. 3d 1, 36-39 (1980).[6]

There is, however, an important distinction to be made between admission of evidence of absence of flight and instructing the jury about it. On the one hand, admission of evidence of the defendant's behavior at the time of arrest gives the jury a look at the complete picture and usually comes in quite naturally, as it did in this case, in testimony describing the defendant's conduct. On the other hand, instruction of the jury may divert their attention from more central issues by an unnecessary attempt at explaining what has been described as "extraordinarily complex action, potentially prompted by a variety of motives other than guilt [or innocence] of the actual crime." *Austin* v. *United States,* 414 F.2d 1155, 1157 (D.C. Cir. 1969). We think Wigmore provides a useful general guideline on the subject in the following observation: "Let the accused's whole conduct come in; and whether it calls for consciousness of guilt or for consciousness of innocence, let us take it for what it is worth, remembering that in either case it is open to varying explanations and is not to be emphasized." 2 Wigmore, Evidence § 293, at 232 (Chadbourn rev. 1979).[7] Testimony describing Martin's conduct at the scene was admitted without objection and his counsel was given substantial latitude in final argument (again without objection) to contend that absence of flight was consistent with Martin's claim of innocence. Relegating the subject to the give and take of argument was appropriate in the circumstances and the refusal of a jury instruction avoided the overemphasis about which Wigmore cautions. We con-

[6] The positions of various other jurisdictions which exclude the evidence are summarized at 2 Wigmore, Evidence § 293 n.1, at 230-232 (Chadbourn rev. 1979).

[7] We emphasize that this is only a general guideline and that we do not formulate a rule making evidence offered to show consciousness of innocence automatically admissible. Each case will present its own circumstances, and the decision to admit or exclude the evidence will depend on a number of factors that cannot be stated with precision and may involve the application of wholly separate rules of evidence. In the final analysis, much will depend on the trial judge's view of the case and the judge's decision to exercise discretion.

clude, where testimony of absence of flight is permitted by the trial judge, see note 7, *supra,* that the inference like the one sought by Martin ought not to "be elevated above any other inference that might be argued to the jury, and given the status of being particularly significant by being enshrined in an instruction." *United States* v. *Telfaire,* 469 F.2d 552, 558 (D.C. Cir. 1972). It was not error to deny the requested instruction.

*Judgment affirmed.*