COMMONWEALTH *vs.* DAVID YOUNG, JR.

Suffolk.    April 15, 1986. — June 26, 1986.

Present: BROWN, PERRETTA, & KASS, JJ.

*Homicide. Practice, Criminal,* Argument by prosecutor. *Evidence,* Relevancy and materiality, Other offense, Hearsay, Spontaneous utterance.

At a murder trial, certain remarks by the prosecutor during final argument, including comment on the coolness of the defendant's demeanor, could not, in the circumstances, reasonably be construed as a comment on the failure of the defendant to testify. [453-455] BROWN, J., concurring.

At a murder trial, remarks by the prosecutor in final argument emphasizing a connection involving drug dealing between the defendant and one of the victims were not unfairly prejudicial to the defendant, where the existence of such a relationship could have fairly been argued on the basis of the evidence. [455]

At the trial of murder indictments arising out of the shooting of two victims, the judge did not abuse his discretion in admitting testimony of three witnesses that, some one to three days prior to the murders, they had seen the defendant in possession of handguns which might have been used in committing the crimes. [455-456]

At the trial of murder indictments arising out of the shooting of two victims in which a witness who had been beaten and shot at by the defendant in the basement of the defendant's parents' home three days before the murders on which the indictments had been based testified that the defendant's father had called out during the attack, "Dave, don't kill him in here, don't kill him in here; I told you not to kill him in here," the father's extrajudicial statement was admissible as a spontaneous utterance. [456-457] BROWN, J., concurring.

INDICTMENTS found and returned in the Superior Court on March 18, 1977.

Following habeas corpus proceedings in Federal courts, the cases were tried anew before *Elbert Tuttle,* J.

*Thomas C. Federico,* Committee for Public Counsel Services (*Stephanie Page,* Committee for Public Counsel Services, with him) for the defendant.

*Judy G. Zeprun*, Assistant District Attorney, for the Commonwealth.

KASS, J. After a third trial, the defendant Young stands convicted of the second degree murder of James ("D.J.") Walker and Leonard Walker.[1] The facts which the jury could have found from the Commonwealth's evidence are essentially the same as those described in detail in *Commonwealth* v. *Young*, 382 Mass. 448, 449-453 (1981).

1. *Prosecutor's closing argument.* In final argument, the prosecutor commented on the defendant's demeanor during the trial: "Did you notice how he just sits there stone-faced, cool, never blinks an eye, doesn't get upset about anything? He's very in control. He doesn't show his emotions when he doesn't want to, does he?" Defense counsel promptly objected to those remarks. Appellate counsel for the defendant argues that the remarks were so unfair as to deprive the defendant of due process and, inferentially, deprived the defendant of his right to remain silent.

In the context of the trial, we do not think the prosecutor's remarks were unfair or that they could reasonably be considered as a comment on the defendant's failing to take the stand. To be sure, a defendant "has the right to remain passive, and to insist that the Commonwealth prove its case beyond a reasonable doubt without explanation or denial by him." *Commonwealth* v. *Powers*, 9 Mass. App. Ct. 771, 774 (1980), quoting

---

[1] The first trial of the murder indictments ended with a hung jury. The second trial resulted in guilty verdicts. The convictions were affirmed. See *Commonwealth* v. *Young*, 382 Mass. 448 (1981). The defendant had raised as an issue on appeal that he had been denied permission to sit with counsel and had been relegated to the prisoner's dock. The court in *Commonwealth* v. *Young, supra* at 461-462, acknowledged that it had, in *Commonwealth* v. *Moore*, 379 Mass. 106, 107-111 (1979), adopted as the governing principle for Massachusetts that defendants ought not to be consigned to the prisoner's dock unless specific and articulated security considerations so required. That principle, however, was to be given prospective effect and the second trial of David Young occurred before the *Moore* case was decided. Upon application for writ of habeas corpus, the rule regarding not placing defendants in the dock without a finding of reasonable necessity to maintain order was given retrospective effect. See *Young* v. *Callahan*, 700 F.2d 32 (1st Cir. 1983). In consequence the conviction was set aside.

from *Commonwealth* v. *Madeiros*, 255 Mass. 304, 307 (1926). Prosecutorial remarks "reasonably susceptible of being interpreted as a comment on [a defendant's] failure to take the stand" are impermissible. *Commonwealth* v. *Domanski*, 332 Mass. 66, 69 (1954). See *Borodine* v. *Douzanis*, 592 F.2d 1202, 1210-1211 (1st Cir. 1979). Evidence of guilt is not to be implied from a defendant's sitting calmly in the courtroom. *Commonwealth* v. *Borodine*, 371 Mass. 1, 11 (1976), cert. denied, 429 U.S. 1049 (1977). Suggesting that a defendant's courtroom behavior betrays consciousness of guilt is proscribed, *Commonwealth* v. *Valliere*, 366 Mass. 479, 494-495 (1974), but comment on coolness of demeanor is not necessarily out of bounds. *Ibid.* See also *Commonwealth* v. *Smith*, 387 Mass. 900, 907 (1983); *Commonwealth* v. *Connor*, 392 Mass. 838, 853 (1984); *Commonwealth* v. *Burston*, 11 Mass. App. Ct. 1036 (1981); *Commmonwealth* v. *Kozec*, 21 Mass. App. Ct. 355, 364 n.7 (1985), further appellate review granted, 397 Mass. 1101 (1986). Cf. 2 Wigmore, Evidence § 274 (3d ed. 1940).

In this case comment on the defendant's coolness was germane and responsive. Defense counsel, in her closing speech, had argued the unlikelihood of murder following upon an apparently friendly meeting between the defendant and D. J. Walker. The prosecutor's reference to the defendant's demeanor was a comment on his ability to dissemble. We do not think the prosecutor's remarks on demeanor can reasonably be construed as a comment on the failure of the defendant to testify. Indeed, in her own closing argument, defense counsel had, as a matter of tactics, made more direct reference to her client's declining to testify. Moreover, the judge gave emphatic instructions that the jury were not to draw inferences adverse to the defendant from his exercising his right not to testify.

Our opinion that the prosecutor's remarks about the defendant's calm were permissible, and not a basis for reversal, should not be read as a general endorsement of comment on a defendant's. calm demeanor in any prosecution. The cases cited, read in the light of their facts, do not stand for a blanket rule that comment on the demeanor of the defendant is permis-

sible in every case. Defense counsel are well advised to —
and do — instruct their clients that courtroom decorum calls
for quiet and controlled behavior. "Sit there," as the saying
goes, "like a fire hydrant." It cannot be fair to pillory a defend-
ant for behaving appropriately. We caution prosecutors that
comment on demeanor is a dangerous device, not to be em-
ployed as a matter of routine, but only if the record context
provides solid ground for it.

Another portion of the prosecution's closing which the de-
fendant protests as an adverse comment on his silence went
as follows: "And D. J. and Young went into a room together
for forty-five minutes, and nobody knows what that conversa-
tion was except David Young. And then came out." In view
of the effort of the defense, in closing, to characterize the same
encounter between D. J. Walker and the defendant, which
occurred on the day D. J. was murdered, as one of reconciliation
in an atmosphere of amity, the prosecution's remark was a
permissible comment on the evidence. See *Commonwealth* v.
*Storey*, 378 Mass. 312, 323-324 (1979).

A third element of the closing argument to which the defend-
ant objects was its emphasis on the victim D. J. Walker's
connection to the defendant as a low-level drug dealer for the
latter, who stood somewhat higher in the chain of distribution.
That relationship could fairly be argued on the basis of the
evidence. See *Commonwealth* v. *Francis*, 391 Mass. 369, 372
(1984). As to the relevance of the drug-dealing setting to the
homicides, see *Commonwealth* v. *Young*, 382 Mass. at 463.

2. *Testimony about weapons.* Three witnesses testified that
they had seen the defendant with handguns prior to the murders.
Anthony Grant (who had been beaten, shot at, and pistol-
whipped three days before the murders)[2] testified over objec-
tion that he had seen the defendant display a black-barreled
.38 calibre handgun and a silver handgun which looked like a
.32 or .38 calibre weapon to him. The victims' sister saw the
defendant with a silver, brown-handled handgun tucked into
his trousers two days before the murders, and had earlier seen

---

[2] See *Commonwealth* v. *Young*, 382 Mass. at 451-452, and *Common-
wealth* v. *Young*, 6 Mass. App. Ct. 953 (1978).

him with a smaller black handgun which she took to be a .22 calibre weapon. A third witness testified he had seen the defendant with a pistol handle sticking out from his trousers the day before the murders. The murder weapon was a .38, but there was ballistic evidence tending to prove that the handgun used to shoot at the witness Grant was a different .38. On the basis of the evidence it was a matter of conjecture whether any of the handguns described by the witnesses was the murder weapon. None of the handguns described came into the possession of the Commonwealth, and none was received in evidence.

The defendant's claim of error is that the evidence of the defendant's gun toting and gun display was of a "prior bad acts" character and, therefore, not admissible. See generally Liacos, Massachusetts Evidence 420 (5th ed. 1981 & Supp. 1985, at 190). Here, however, the probative force of the evidence was not that the defendant was a bad man (evidence of the brutal assault on Grant, which was tied to the murders, was more potent in that regard), but that he possessed the means to commit the crimes. *Commonwealth* v. *Caine*, 366 Mass. 366, 371 (1974). Ten .38 calibre bullets had been fired into the two victims. That the defendant had been in possession of weapons which might have been used in committing the crimes was, in the judge's discretion, admissible. *Commonwealth* v. *Toro*, 395 Mass. 354, 356 (1985). Unlike the evidence in the case of *Commonwealth* v. *Toro, supra* at 357-358, the evidence received did not concern weapons which had definitively been established to be unconnected with the crime around which the trial revolved.

3. *Admission of hearsay.* Anthony Grant testified that, after the defendant had fired a hangun at him in the basement of the defendant's parents' house, the defendant's father called down, "Dave, don't kill him in here, don't kill him in here; I told you not to kill him in here." The extrajudicial statement was not offered to establish the truth of any facts asserted in it, but for atmospherics, to give the jury the benefit of the complete occurrence. As such it was admissible under the exception to the hearsay rule which permits receiving evidence of spontaneous statements closely connected with, and perhaps

affecting, the conduct in issue. See *Commonwealth* v. *Harris*, 376 Mass. 201, 206-207 (1978); Liacos, *supra* at 350-352; 6 Wigmore, Evidence §§ 1746-1750 (Chadbourn rev. 1976). See also *Hartnett* v. *McMahan*, 168 Mass. 3 (1897); *Commonwealth* v. *Simpson*, 300 Mass. 45, 50, cert. denied, 304 U.S. 565 (1938). Parenthetically, in the context in which the statement came into the record, its capacity to impress the jury must have been marginal if the jury were inclined to credit Grant's testimony. That testimony recounted a tale rich in brutality, vengeance, and threatened murder.

*Judgments affirmed.*

BROWN, J. (concurring). Unlike some who think that overreaching and various other transgressions by the Commonwealth occur most often in close cases, I still cling to the notion that thoughtlessness rather than contrived unfairness precipitate the vast majority of the alleged errors presented on appeal. Here we see the Commonwealth in its third effort to convict this defendant. One would have thought it would have avoided steering straight for the iceberg. See *Commonwealth* v. *Kozec*, 21 Mass. App. Ct. 355, 366 (1985) (Brown, J., concurring), further appellate review granted, 397 Mass. 1101 (1986).[1]

I accept the majority's justification, on the facts of this particular case, for the comment about the defendant's controlled demeanor, but I wish to highlight what the majority touches on too gently, namely, the "Catch-22" quality of the prosecutor's comment that "[h]e's very in control." The defendant would be adversely affected if he were not calm and under control. What was this defendant, or any defendant, supposed to do in such a situation?

---

[1] Regrettably, it must be said again that if prosecutors cannot get it right or at least strive to make it right, see *Commonwealth* v. *Paiva*, 16 Mass. App. Ct. 561, 563 (1983), they should turn in their tickets. See *Commonwealth* v. *Kozec*, 21 Mass. App. Ct. at 367 n.2 (Brown, J., concurring).

Finally, in passing, I note that the admission of the prejudicial extrajudicial statement of Anthony Grant was at the margin and needlessly daring. The Commonwealth did not need this potentially explosive piece of evidence and the judge's handling of it was questionable. Judges and prosecutors, alike, are responsible for ensuring the fairness of criminal trials. '