COMMONWEALTH *vs.* LAWRENCE S. KELLY. July 22, 1980. 1(a). The defendant, a black man convicted of kidnap and rape of a white woman, claims error in the refusal of the trial judge to dismiss the jury venire because only five of the fifty prospective jurors were black. In the absence of any evidence that the ratio of blacks to the venire as a whole was disproportionately smaller than the ratio of blacks to the population as a whole in Suffolk County and that the alleged underrepresentation was due to systematic exclusion, the challenge is without merit. *Commonwealth* v. *Williams*, 378 Mass. 217, 221-222 (1979). *Commonwealth* v. *Scanlan*, 9 Mass. App. Ct. 173, 176-178 (1980). (b). Three members of the jury that convicted Kelly were black. To support his claim that the Commonwealth used its peremptory challenges impermissibly to keep blacks off the jury in violation of the principles announced in *Commonwealth* v. *Soares*, 377 Mass. 461, 488, cert. denied, 444 U.S. 881 (1979), the defendant points to the Commonwealth's exclusion by challenge of the two other black jurors in the venire. The Commonwealth accepted without objection the three black persons who ultimately sat on the jury; it did challenge the third and fifth blacks questioned. These facts do not disclose a pattern of systematic exclusion of blacks through the use of peremptory challenges. See *Commonwealth* v. *Soares, supra* at 499. Moreover, the likelihood that these two blacks were excluded from the jury solely because of their race, see *id.*, is slight, since three blacks were seated and the Commonwealth's attorney explained one of his challenges as based upon the individual's demeanor, manner and the "smirk on her face." This was an acceptable reason, *id.* at 484, and was, in fact, the same explanation offered by the defendant for one of his peremptory challenges, when the Commonwealth pointed out that the defense had excluded from the jury every white female called.

2. There was no error in the denial of the defendant's request for a continuance of his trial, an action we disturb only if there is a clear abuse of discretion. *Commonwealth* v. *Jackson*, 376 Mass. 790, 792 (1978). It is for the judge to balance the movant's need for additional time against the prejudice to the Commonwealth. *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 51 (1976). There is no "mechanical test" for deciding when a denial of a continuance is arbitrary and so a violation of a defendant's

constitutional rights. *Id.* Here, the case came to trial almost five years after the indictments were returned. During that time several continuances were granted, some at the request of the defense, and the defendant was in default for three and a half years. The motion for a continuance was based on Kelly's medical condition. He suffered from chronic pancreatitis. Five days after the jury were empanelled, he underwent an emergency appendectomy to remove what turned out to be a normal appendix. At the time of trial, he was taking Percocet, a pain killer routinely prescribed following operations. Three days after the operation, Kelly's incision and sutures separated under unclear circumstances which permitted an inference of a self-inflicted wound. Eight days after the operation, the court conducted extensive hearings on the motion, including thorough examination of the defendant and his doctor, who testified that Kelly was fit to stand trial. The judge was entitled to rely on this evidence. *Commonwealth* v. *Vailes*, 360 Mass. 522, 524-525 (1971). Compare *Pate* v. *Robinson*, 383 U.S. 375, 385-386 (1966), relied on by defendant, where no hearing was held. The likelihood that the Commonwealth would be prejudiced by the grant of a continuance was manifest. The chief witness, the victim, was on temporary leave from military assignment in California, awaiting transfer to Okinawa, and was brought back to Massachusetts at the Commonwealth's expense. No prejudice to the defendant is apparent. Compare *Commonwealth* v. *Cavanaugh, supra; Commonwealth* v. *Silva*, 6 Mass. App. Ct. 866 (1978). No abuse of discretion has been shown.

3. An inculpatory conversation between the defendant and an accomplice, which took place while they were in adjoining cells following "booking" at the police station, came before the jury as an admission of the defendant through the testimony of a police officer who overheard the conversation. The officer had entered the cellblock area in which the defendant was incarcerated to serve a motor vehicle citation on the accomplice (he and the defendant had initially been stopped for a traffic violation and were arrested before the citation was issued). He overheard the two men talking, slowed down to hear the full conversation, and then served the citation. This conversation was not the result of either police interrogation or other police conduct designed to prompt the statements made. See *Rhode Island* v. *Innis*, 446 U.S. 291, 294-303 (1980). Compare *Commonwealth* v. *Brant*, 380 Mass. 876, 882-886 (1980). Therefore, *Miranda* v. *Arizona*, 384 U.S. 436, 478 (1966), is inapplicable. *Commonwealth* v. *Swenor*, 3 Mass. App. Ct. 65, 68 (1975). There is no evidence that the defendant's statements were involuntarily made; he took the risk that he might be overheard by the police. *Commonwealth* v. *Dundon*, 3 Mass. App. Ct. 200, 204 (1975). In these circumstances, the defendant had little expectation of privacy. The cellblock area was entered through an open front door, contained about fourteen cells, and was easily accessible to police officers, who, in fact, frequently walked through

unannounced. Conversation between occupants of the various cells could be overheard in other cells. See *Commonwealth* v. *Dougherty*, 343 Mass. 299, 305 (1961). There was no obligation on the part of the police officer to warn the defendant of his presence or to stop the defendant from speaking. *Commonwealth* v. *Stroud*, 375 Mass. 265, 270-271 (1978). Thus, the conversation was properly admitted. See *Commonwealth* v. *Murphy*, 6 Mass. App. Ct. 335, 339, 341 (1978).

*Judgments affirmed.*

*John C. McBride* for the defendant.
*Timothy P. O'Neill*, Assistant District Attorney (*M. Catherine Huddleson*, Legal Assistant to the District Attorney, with him) for the Commonwealth.