COMMONWEALTH vs. HEWITT O. BODDEN.

Suffolk.   December 15, 1986. — May 5, 1987.

Present: BROWN, CUTTER, & SMITH, JJ.

*Rape. Jury and Jurors. Practice, Criminal,* Examination of jurors. *Due Process of Law,* Examination of jurors.

At the pretrial hearing on a black defendant's motion for an individual examination of prospective jurors in regard to the possible existence of racial prejudice and again during the jury impanelment stage at his trial on indictments charging him with aggravated rape and other serious offenses, there was no reversible error in the judge's refusing to question the prospective jurors individually, rather than collectively, with respect to racial prejudice where, in response to the judge's repeatedly asking whether the case had racial overtones, defense counsel's statements that the complainant was "Puerto Rican" did not adequately inform the judge that the defendant and complainant were of different races. [138-140] BROWN, J., concurring.

Although, in questioning jurors pursuant to the first paragraph of G. L. c. 234, § 28, the judge in a case involving an alleged interracial rape chose to hear the jurors' responses in open court, rather than to follow the preferred, customary practice of hearing those responses privately at the sidebar, in the circumstances no prejudice to the defendant resulted. [140-141]

INDICTMENTS found and returned in the Superior Court Department on April 13, 1984.

The cases were tried before *John T. Ronan, J.*

*Eric Brandt,* Committee for Public Counsel Services, for the defendant.

*Judy G. Zeprun,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was the subject of four indictments that charged him with five offenses: two counts of aggravated rape, assault and battery by means of a dangerous weapon, kidnapping, and assault by means of a dangerous weapon. After a jury trial the defendant was found guilty of one count

of aggravated rape[1] and of assault and battery as a lesser included offense on the indictment that charged assault and battery by means of a dangerous weapon. He was found not guilty of the second aggravated rape charge, kidnapping, and assault by means of a dangerous weapon.

The defendant claims that the judge committed reversible error during the jury selection process. He contends that the judge erred in (1) denying the defendant's motion for individual questioning of prospective jurors with regard to possible racial prejudice and (2) refusing to hear the responses of prospective jurors to collective questioning on other matters privately at the sidebar.

The following is a summary of the complainant's testimony. Shortly before midnight on February 12, 1984, she went out to a nightclub to dance. There she met the defendant, whom she did not know. He introduced himself to her as "Roberto" and bought her a couple of drinks. She left the first nightclub and went with a girlfriend to a second club, where she had more to drink. After that club closed, she went to an "after hours" place, where she again saw the defendant and had more drinks. By 3:00 or 3:30 A.M., she was dizzy and wanted to go home, but she had no money and could not get a ride. The defendant offered to give her cab fare, indicating that he could get some money from a bank machine. They left the after hours place and got a ride to a bank machine. After the people in the car had left, the defendant stated that he had forgotten his bank card; he then suggested he get her some money at his mother's house a few blocks away. The complainant did not want to go, but she consented when the defendant assured her she could wait outside.

While they were walking, the complainant again felt dizzy and tried to flag a taxi, but the defendant grabbed her and pulled her out of the street, forcing her to accompany him to the house. Once there, he held her arm and pushed her up the stairs, despite her repeated protests. After he unlocked the door

---

[1] Acting on a motion of the defendant, the judge reduced the jury verdict on the aggravated rape charge to guilty of the lesser included offense of rape.

to the apartment, he dragged her inside by her hair, punched and kicked her, forced her to the bedroom, threatened to kill her with a screwdriver, and choked her until she consented to have sexual intercourse with him. He scratched her with pieces of ceramic that had broken during their struggle, ripped off her clothes, then raped her vaginally and rectally. Afterward, he dressed and told her to dress, and then he walked her out of the house with a knife at her back, threatening to kill her. He left her on the street three or four blocks away, where she saw a woman and told her what had happened. The police were called, and the complainant showed the police the third-floor apartment where the attack had occurred. An ambulance took her to a hospital, and she told the emergency medical technicians, a nurse, and a doctor that she had been raped. She also told the two police detectives who were investigating the complaint. Later, she identified the defendant from photographs as the person who had raped her.

The complainant's testimony was corroborated by physical evidence (torn clothing, photographs, and medical evidence) and the testimony of numerous fresh complaint witnesses. Four of the witnesses described the complainant's injuries. They all stated that the complainant's lips and the side of her face were bloody, and that her face was swollen.

The defendant did not dispute that he and the complainant had sexual intercourse or that she had been beaten by someone that night. He presented three witnesses in his defense: a detective involved in the investigation, the landlady in the defendant's apartment building and her thirteen year old son. Their testimony may be summarized as follows. The detective testified that the complainant told him that she and the defendant had "walked" to his mother's house, and she never told the police about being "forced to do so." The landlady testified that she awoke at about 5:30 A.M. and heard "laughter" and "very happy" voices. She then heard footsteps going up the stairs that continued up to the third floor, where she heard the defendant's door open. She also testified that she did not hear any yelling at that time, or any loud noises thereafter. The landlady's son testified that he saw the complainant standing

alone on the stairway. He saw nothing unusual about her face — no cuts or bruises — and saw no blood on her clothing.

The jury deliberated over a period of four days. At the beginning of the fourth day, the judge read to them the instruction taken from *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 102-103 (1973). Later that day, the jury completed their deliberations and returned with their verdicts.

Prior to trial, the defendant, a black man, filed a motion for an individual examination of prospective jurors in regard to the possible existence of racial prejudice. He claimed that, because he had been accused of an interracial rape, he was entitled to such an inquiry. He cited *Commonwealth* v. *Sanders*, 383 Mass. 637, 640-641 (1981). That case held that, if a defendant is charged with interracial rape, the judge must grant a defendant's request for individualized questioning of prospective jurors regarding possible racial bias. At the hearing on the motion, defense counsel informed the judge that the defendant was black. The judge then inquired of defense counsel, "Is this a black and white situation?" He responded, "Well, black and Puerto Rican." Upon hearing that response to his question, the judge ruled that *Sanders* was not applicable and denied the defendant's motion.

At the trial, after the judge concluded asking the statutory questions of the prospective jurors, defense counsel renewed his request for an individual voir dire as to possible racial bias. The judge again inquired as to the complainant's race. Once again, the response was that she was "Puerto Rican." At this point the judge commented that the term "Puerto Rican" described the complainant's "nationality" and not her race. Defense counsel then informed the judge that the complainant was "light-skinned." After further discussion at the bench, the judge told defense counsel that, because the complainant was "lighter-skinned" than he at first thought, he would "mention it" to the prospective jurors, collectively, by asking the question set out in the margin."[2] The defendant objected to the procedure

---

[2] The question asked by the judge is as follows: "In this particular alleged event, in this case, as you can plainly see, the defendant is a black man.

used by the judge in asking the question but not to the contents of the question itself.

On appeal, the defendant argues that the *Sanders* decision controlled the situation here, and that the judge committed prejudicial error when he refused to conduct an individual voir dire as to racial prejudice.[3] We conclude that in the circumstances there was no error.

*Commonwealth* v. *Sanders, supra,* was an interracial rape case.[4] Here, the record shows that the trial judge was thoroughly familiar with that decision. When presented with the defendant's motion, prior to trial and again at the jury impanelment stage, he repeatedly asked the defense counsel whether the case had racial overtones. The response by defense counsel that the complainant was "Puerto Rican" did not adequately inform the judge that the defendant and complainant were of different races.[5] It is clear that, in order to invoke the procedure

---

I'm given to understand that the alleged victim . . . is Puerto Rican. I gave you that information, because that's the information I've been given. The question is simply whether or not, because of that, that is to say because the defendant stands accused, and is black, and the crime that he stands accused of, it is alleged that the victim thereof is Puerto Rican — is there anything in the nature of that extraneous circumstance, simply because it's so, that would interfere, or impede, or hinder your service as a juror in any way, should you be called upon to serve in this matter?

There was no response to the question, and the judge declared the prospective jurors to be indifferent.

[3] The defendant's entire argument is based on a purported violation of *Sanders*. He does not claim that an extraneous issue, requiring an individual voir dire, existed because he is black and the complainant Puerto Rican. See Mass.R.Crim.P. 20 (b) (2), 378 Mass. 890 (1979). Nor does he contend that the facts in the case show that he was a "special target for racial prejudice." *Commonwealth* v. *Ross,* 363 Mass. 665, 672, cert. denied, 414 U.S. 1080 (1973) (with dissents), habeas corpus granted sub nom. *Ross* v. *Ristaino,* 388 F. Supp. 99 (D. Mass.), aff'd, 508 F.2d 754 (1st Cir. 1974) rev'd, 424 U.S. 589 (1976).

[4] The appellate courts have expanded the *Sanders* decision to other situations. See *Commonwealth* v. *Hobbs,* 385 Mass. 863, 873 (1982) (interracial sexual offenses against children); *Commonwealth* v. *Stephens,* 15 Mass. App. Ct. 461, 465 (1983) (interracial relationship between pimp and prostitute involving physical violence).

[5] Appellate counsel, who was not trial counsel, concedes that trial counsel's representation to the judge that the complainant was "Puerto Rican"

required by *Sanders* and its progeny (see note 4, *supra*), the defendant must make a showing to the judge that he and the complainant are of different races. The record in the instant case demonstrates that no such foundation was established. There is nothing in the question asked of the prospective jurors to indicate that the judge believed the complainant was of a different race than the defendant's. The question referred to the complainant's place of origin, not her race. Apparently, the judge asked the question to assure that a prospective juror would not be influenced by the fact that the complainant was of a lighter complexion than the defendant's. Although it would have been better practice for the judge to ask the question of the prospective jurors individually, and not collectively, he was not required to do so.

We emphasize that our decision is based on the circumstances in this case. The *Sanders* decision is clear that, in interracial rape cases, the trial judge must grant a defendant's request for *individualized* questioning of the prospective jurors as to racial bias. Our decision should not be considered as relaxing that requirement.

The defendant also objected to the procedure used by the judge in regard to the responses of the prospective jurors to the statutory questions. See G. L. c. 234, § 28, first par. See also Mass.R.Crim.P. 20(b) (1), 378 Mass. 889 (1979). The questions were asked of the prospective jurors collectively, and, if a particular question was relevant to a prospective juror, the judge would hear the response in open court. This is not the customary procedure used in criminal trials. The usual procedure in regard to the statutory questions is collective questioning followed by questioning at the side bar of individual prospective jurors who respond to the questions. It would have been wiser for the judge to follow the customary practice. Fortunately,

did not adequately inform the judge that she was a member of a race different from the defendant. Appellate counsel cannot argue otherwise in the face of the fact that the term "Puerto Rican" refers to the complainant's place of origin, not her race. A person from Puerto Rico may be a member of any race, or have mixed ancestry.

no prejudice was caused to the defendant as the prospective jurors' responses were innocuous.

*Judgments affirmed.*

BROWN, J. (concurring), I concur, albeit reluctantly, in the result because I do not think that *Commonwealth* v. *Sanders,* 383 Mass. 637 (1981), controls the instant circumstances. If *Sanders* did, the defendant's convictions would have to be reversed. My sole basis for thinking that the convictions should stand is that, as the majority indicates, the race of the complainant has not been made to appear with the requisite clarity. See *Commonwealth* v. *Williams,* 6 Mass. App. Ct. 923, 924 (1978) (Brown, J., concurring). Based on this lack of clarity, I cannot say with confidence that this was an interracial rape, or that the jury would perceive it as such. See and compare *Commonwealth* v. *Hogue,* 6 Mass. App. Ct. 901, 901-902 (1978).

Of course, when there is doubt, it is always prudent to grant a defendant's request for individualized questioning of prospective jurors regarding possible racial bias. See *Commonwealth* v. *Lumley,* 367 Mass. 213, 216-217 & n.2 (1975). I think that a defendant is entitled to an individual voir dire if he reasonably believes that, because the victim and defendant are from different ethnic groups, there is a potential for bias. Cf. *Al-Khazraji* v. *Saint Francis College,* 784 F.2d 505, 517 (3d Cir. 1986), cert. granted in part, 497 U.S. 812 (1986) (Congress's purposes under 42 U.S.C. § 1981 (1982), to ensure that all persons be treated equally without regard to color or race embraces membership in a group that is ethnically and physiognomically distinctive).

Moreover, notwithstanding the judge's hesitancy, if the Commonwealth had supported the defendant's motion for individualized questioning, I am certain the judge would have allowed the motion. I say, once again, that it is the responsibility of all parties to strive to ensure that all trials are fair and free of any potential error. Cf. *Commonwealth* v. *Paiva,* 16 Mass. App. Ct. 561, 563 (1983). A busy appellate court needs unnecessary issues as much as a fish needs a bicycle.