COMMONWEALTH vs. DOMINGO LOPEZ.

No. 87-1274.

Essex.  June 28, 1988. — December 2, 1988.

Present: GREANEY, C.J., SMITH, & WARNER, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Practice, Criminal,*
Examination of jurors, Presumptions and burden of proof, Assistance
of counsel, Fair trial, Comment by prosecutor, Argument by counsel.
*Jury and Jurors. Evidence,* Credibility of witness. *Self-Defense.*

In the circumstances of a case involving a crime of violence in which the evi-
dence of guilt presented was not "overwhelming," the trial was a contest
of credibility between the defense and prosecution witnesses, and animos-
ity toward the defendant created by questioning prospective jurors on
the subject of racial prejudice may well have been an important factor
in the jury's verdict, the judge's failure to conduct a colloquy with the
defendant personally to ensure that his pretrial motion requesting race-
related questioning was made knowingly and voluntarily was prejudicial
error requiring that a new trial be held. [620-622]
At a criminal trial in which potential for ethnic tension existed, the defendant
was not prejudiced by the prosecutor's referring, in closing argument,
to the defendant as a "macho guy" and "macho Lopez," where such
references were used in an attempt to show that the defendant, not the
victim, was the aggressor and where, in any event, the word "macho"
was first used by the defendant in referring to himself, in answers to
questions posed by his lawyer, to explain certain conduct on his part
that might appear damaging to his cause. [622-624]

INDICTMENT found and returned in the Superior Court De-
partment on January 23, 1986.

The case was tried before *Robert S. Prince,* J.

*Brownlow M. Speer,* Committee for Public Counsel Serv-
ices, for the defendant.

*Elin H. Graydon,* Assistant District Attorney, for the Com-
monwealth.

SMITH, J. The defendant was found guilty by a jury on an indictment that charged him with assault and battery by means of a dangerous weapon. On appeal, he argues that (1) the judge committed prejudicial error when he failed to conduct a colloquy with the defendant before examining prospective jurors on the subject of possible racial prejudice, and (2) the prosecutor made prejudicial remarks in his closing argument. We reverse.

Most of the facts as to the events leading up to the incident that gave rise to the indictment are not in dispute. The complainant, one Kirby, a white male, and the defendant, a Hispanic male, were very good friends. On the day preceding the incident, Kirby and his wife had separated, and the defendant assisted him in moving into the apartment Kirby had rented. After they finished, Kirby drove the defendant to a bar where they had several drinks. Later they went to an after-hours establishment, stayed there awhile, and then Kirby drove the defendant home.

When they arrived there, the defendant told Kirby that the reason his wife wanted him to move out of their house was that she wanted to go out with the defendant.[1] Kirby did not believe him so he drove the defendant to his wife's house to check out the story. On their arrival, Kirby banged on the front door and awoke his wife. She came to the door but refused to open it. Kirby confronted her with the defendant's story and she branded it as false. She then told both men to leave before she called the police.[2] The men started to walk toward Kirby's automobile.

---

[1] The day before, the defendant had telephoned Kirby's wife and offered to have sexual intercourse with her after Kirby moved out. She declined the offer and told Kirby about the telephone call.

The defendant testified that while driving him home, Kirby accused him of telephoning his wife and being "fresh" with her. The defendant was surprised that she had told Kirby about the telephone call. Although the accusation was true, the defendant denied it and told Kirby that the reason for Kirby's separation was because his wife was seeking the defendant's companionship.

[2] Kirby's wife went to the telephone and called the police. She requested that a police cruiser be sent to her address because "there could be a brawl outside."

At this point, Kirby's testimony and the defendant's version concerning the stabbing incident diverge in material respects. Kirby testified that as the men approached his automobile, he noticed the defendant start to walk away. Kirby yelled at the defendant to come back and he would drive him home. As Kirby turned to open the door to allow the defendant to enter the automobile, he saw the defendant make "a swinging motion with his arm." Kirby had been stabbed in the side by the defendant with a knife. Kirby's wife, who was living with him at the time of the trial, testified that she saw the incident from her window. She corroborated her husband's version.

The defendant testified that he had stabbed Kirby in self-defense. He stated that after Kirby's wife ordered the two men to leave, they walked toward Kirby's automobile. The defendant, however, refused to get into the automobile because Kirby was drunk and "driving crazy." The defendant told Kirby that he would walk home. Kirby then grabbed him, forced him to his knees, and started to choke him. Kirby said, "Get in the car or I'll kill you right here, like that." Kirby then applied more pressure on the defendant's neck. The defendant testified that he could not breathe and he believed his life was in danger. He pulled out his knife and stabbed Kirby.

1. *The colloquy.* At a lobby conference prior to trial, defense counsel moved under G. L. c. 234, § 28, to have prospective jurors individually interrogated about possible racial prejudice. The judge exercised his discretion, see *Commonwealth* v. *A Juvenile (No. 2)*, 396 Mass. 215, 222 n.8 (1985), by granting the motion and questioned the prospective jurors on the issue of possible racial bias.[3] At no time, however, did the judge conduct a colloquy with the defendant personally to "ascertain that. [his] decision to insist on specific questions regarding racial bias was a knowing and voluntary one." *Commonwealth*

---

[3] The judge questioned the prospective jurors as a group, not individually, as to possible racial bias. Defense counsel agreed to the procedure and no challenge to it has been raised on appeal. Therefore, we need not determine whether questioning of prospective jurors as to possible racial bais must be done individually in cases involving interracial stabbing. See *Commonwealth* v. *A Juvenile (No. 2)*, *supra*.

v. *Sanders*, 383 Mass. 637, 641 (1981), quoting from *Commonwealth* v. *Lumley*, 367 Mass. 213, 217 (1975). See *Commonwealth* v. *A Juvenile (No.2)*, *supra* at 222-223; *Commonwealth* v. *Washington*, 402 Mass. 769, 772-773 (1988).

"The judge's failure to conduct such a colloquy on his own motion was error, and no objection was necessary to preserve the defendant's right of review." *Commonwealth* v. *Rivera*, 397 Mass. 244, 251 (1986). *Commonwealth* v. *A Juvenile (No. 2)*, *supra* at 223-224. However, the error "is not grounds for reversal unless the defendant can demonstrate resulting prejudice. . . . The defendant . . . must show that the error 'possibly weakened his case in some significant way so as to require a new trial.' " *Id.* at 224, quoting from *Commonwealth* v. *Schulze*, 389 Mass. 735, 741 (1983).[4]

In *Commonwealth* v. *Washington*, 402 Mass. 769, 772-774 (1988), the judge had failed to conduct a colloquy with the defendant before questioning the prospective jurors on the issue of possible racial bias and the court ordered a new trial. The court observed that the evidence of guilt in the case was not "overwhelming" and "conflicting evidence rendered the outcome of jury deliberations uncertain." The court concluded that in those circumstances, the failure to conduct the colloquy was prejudicial error.[5]

---

[4] The Commonwealth claims that the failure to conduct the colloquy was not error because there was no showing that the defendant and Kirby were of different races. It cites *Commonwealth* v. *Bodden*, 24 Mass. App. Ct. 135 (1987), as support for its argument. In *Bodden*, we held that "the defendant must make a showing to the judge that he and the complainant are of different races. . . . There is nothing in the question asked of the prospective jurors to indicate that the judge believed the complainant was of a different race than the defendant's." *Id.* at 140.

In this case, the following question was asked of the prospective jurors:

"The alleged victim and the witnesses in this case are of the white race and the defendant is Hispanic. Are you aware of any feelings of *bias or prejudice based on race* which might affect your ability to decide this case fairly and impartially." (emphasis added).

It is clear from the phrasing of the question that the judge believed race was an issue.

[5] *Commonwealth* v. *Washington, supra,* was decided after arguments were heard in this case. At our request, both parties submitted supplemental briefs dealing with *Washington.*

This case is similar to *Washington*. The Commonwealth had the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *Connolly* v. *Commonwealth*, 377 Mass. 527, 530 (1979). The evidence was not overwhelming on that point. Kirby testified that he was not the aggressor but rather was stabbed without any provocation on his part. However, the undisputed evidence showed that Kirby had recently learned that the defendant had called Kirby's wife and had been "fresh" with her. Further, just before the incident, he was told by his wife that the defendant had lied to him about the reason she wanted Kirby to move out of the house. The defendant claimed that Kirby was the aggressor and had engaged him in a fight because of the defendant's conduct toward his (Kirby's) wife. As in *Washington*, credibility of the witnesses was the main issue in the case. "Credibility of witnesses is an issue peculiarly in the province of the finder of fact." *Commonwealth* v. *Washington*, 402 Mass. at 774. Also see *Commonwealth* v. *Longo*, 402 Mass. 482, 489 (1988). The jury verdict cannot "be attributed to the overwhelming evidence of guilt presented . . . ." *Commonwealth* v. *A Juvenile* (*No. 2*), 396 Mass. at 224-225. Rather, animosity toward the defendant created by the race-related questioning may well have been an important factor in the jury's decision. In these circumstances, the failure of the judge to conduct a colloquy was prejudicial error. Contrast *Commonwealth* v. *Horne*, *post* 996, 997-998 (1988).

2. *The prosecutor's closing argument.* Because the issue may recur at the retrial, we briefly discuss the defendant's claim that certain comments in the prosecutor's closing argument constituted prejudicial error.

During the course of his direct examination, the defendant was asked by defense counsel why he was carrying a knife at the time he stabbed Kirby. The defendant answered: "Because I felt good walking around with my big buddy. I felt *macho* carrying my new knife with him. So, every time I was with him, I put on my knife and walked out of the house with it." (Emphasis added.) Later, again on direct examination, the defendant was asked by his counsel what he had said to Kirby's

wife when he telephoned her a few days prior to the incident (see note 1). The defendant answered: "I don't remember the exact words, but I know I . . . I got fresh with her, you know, meaning that since I knew her and [Kirby] were breaking up, so I was just acting all *macho* and just acting conceited . . . ." (Emphasis added.)

In his closing argument, the prosecutor twice referred to the defendant as a "macho guy" and twice as "macho Lopez." The defendant objected to those references but the objections were overruled. The defendant argues, on appeal, that by making "repeated use of the word 'macho,' the prosecutor was making a blatant appeal to popular racial stereotypes about sex and violence." He claims that the prosecutor's actions constituted prejudicial error. We disagree.

"Appeals to racial, religious, or ethnic prejudices are especially incompatible with the concept of a fair trial because of the likelihood that such references will 'sweep jurors beyond a fair and calm consideration of the evidence.' " *Commonwealth* v. *Mahdi*, 388 Mass. 679, 693 (1983), quoting from *Commonwealth* v. *Graziano*, 368 Mass. 325, 332 (1975). The word "macho" as it is used today, does not refer to a male of any particular racial or ethnic group but rather to any male who has an exaggerated sense of masculinity. See American Heritage Dictionary of the English Language 751 (2d College ed. 1982). Further, it was the defendant who put the word in play. He used the word "macho," in answers to questions posed by his lawyer, in an attempt to explain some conduct on his part (carrying the knife, propositioning his friend's wife) that might appear damaging to his cause.

The prosecutor, in his closing argument, was obviously using the word in an attempt to show that the defendant, not Kirby, was the aggressor. "Within the bounds of the evidence and the fair inferences from the evidence, great latitude should be permitted to counsel in argument." *Commonwealth* v. *Gilmore*, 399 Mass. 741, 745 (1987). Perhaps there may be instances where the use of the word "macho" may be considered to be an appeal to "racial, religious or ethnic prejudices," *Commonwealth* v. *Mahdi, supra.* This, however, is not such a case.

In the circumstances we find no error in the prosecutor's closing argument.

The judgment is reversed, the verdict set aside, and the case is remanded for a new trial.

*So ordered.*