COMMONWEALTH vs. WILLIAM M. GREAVES.

No. 89-P-269.

Bristol. June 7, 1989. — July 18, 1989.

Present: ARMSTRONG, KASS, & FINE, JJ.

*Homicide. Practice, Criminal,* Required finding, Verdict, Plea, Lesser
included offense, Judicial discretion, Appeal by Commonwealth.

In a criminal case, the record of postconviction proceedings demonstrated
that the judge's exercise of discretion under Mass.R.Crim.P. 25 (b) (2)
to reduce the verdict from second degree murder to involuntary man-
slaughter was not tainted by improper procedures at the posttrial hearing
[591-593], nor was any abuse of the judge's discretion shown [594-595].

INDICTMENT found and returned in the Superior Court De-
partment on January 14, 1985.

The case was tried before *Chris Byron,* J., and postverdict
motions were heard by him.

*Beth R. Levenson,* Assistant District Attorney, for the Com-
monwealth.

*Armand Fernandes, Jr.,* for the defendant.

FINE, J. Angry words were exchanged at the bar of the "A-1
Pizza" in Fall River after a bartender refused to serve drinks
to the defendant. The defendant left the bar and went home to
obtain a rifle. From a distance of between thirty and thirty-five
yards from the building housing the bar, he fired one shot
through a window, killing a bar patron who had not been
involved in the altercation. The defendant confessed his in-
volvement in the shooting the same night. A former marine
who served in Vietnam, the defendant claimed in his statements
to the police that during the evening, having just finished a
book on Vietnam, he was depressed and intoxicated, that the
incident in the bar had angered him, and that, without intending
to harm anyone, he shot in the direction of the roof.

On this and other inculpatory evidence, which was substantiated by numerous witnesses during an eight-day jury trial and which the trial judge properly ruled warranted a guilty verdict of murder, the defendant was convicted of second degree murder and sentenced to life imprisonment.[1] Posttrial proceedings, some quite irregular, took place about three weeks later. As a result of the judge's posttrial rulings, the defendant stands convicted of only so much of the murder indictment as charged manslaughter and sentenced to a term of fifteen to twenty years at M.C.I., Cedar Junction.

The Commonwealth appealed the reduction of the offense from murder to manslaughter. We agree with the Commonwealth that some of the judge's posttrial actions were improper. We accept at face value, however, the judge's statement that he was acting in the exercise of his discretion under Mass.R.Crim.P. 25(b)(2). Contrary to the contentions of the Commonwealth, we conclude that the judge's decision under rule 25(b)(2) was unaffected by the improper proceedings and that, on the evidence in the case, the ruling was not arbitrary or unreasonable. We therefore affirm the manslaughter conviction.

1. *The improper posttrial procedures did not taint the judge's exercise of discretion under Mass.R.Crim.P. 25(b)(2).* Before the trial began, the defendant filed a motion, pursuant to Mass.R.Crim.P. 36, 378 Mass. 909 (1979), to dismiss the indictments for failure to provide him with a speedy trial. The motion was neither heard nor decided before trial. At various times in the course of the trial, the rule 36 motion and also

---

[1] The defendant was also indicted on two counts of assault and battery with a dangerous weapon, unlawful carrying of a firearm without a proper license, and injury of more than $100 to a building. At the outset of the trial, the judge dismissed as duplicitous the count for assault and battery with a dangerous weapon involving the deceased victim. At the close of the Commonwealth's case, the judge allowed a motion for a required finding of not guilty as to the indictment for injury to a building. The jury found the defendant not guilty of the one remaining charge of assault and battery with a dangerous weapon. They found him guilty of the firearms charge. On that charge the defendant received a sentence, concurrent with the sentence on the murder conviction, of two and one-half to five years at M.C.I., Cedar Junction. This appeal concerns only the murder indictment.

the possibility of a guilty plea were mentioned by the judge and were the subjects of unrecorded sidebar conferences. After trial, the defendant renewed his rule 36 motion, and he also filed a motion under Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), seeking, alternatively, a required finding of not guilty, a new trial, or a reduction of the verdict to manslaughter. The judge commenced a hearing on the rule 36 motion at which he also heard argument on the rule 25(b)(2) motion. Before deciding either motion, however, the judge raised the subject of a possible guilty plea. After a discussion off the record, the defendant offered to plead guilty to so much of the murder indictment as alleged manslaughter, and a plea colloquy ensued.

The prosecutor objected to the plea proceeding and to the acceptance of the plea, contending that the verdict should stand unless the judge were to allow one of the defendant's then pending motions. The prosecutor advised the judge that, in his view, the defendant could be sentenced for manslaughter only if the judge acted favorably on the rule 25(b)(2) motion to reduce the verdict. The judge then stated that he was allowing the rule 25(b)(2) motion and reducing the verdict to manslaughter. He explained his reasoning as follows:

> "My memory of the evidence in this case is that the defendant had consumed a considerable amount of alcohol before the shooting. Witnesses differed as to the degree of his sobriety. Police officers who are trained to observe and make a determination of sobriety testified that he was under the influence. Some testified to the contrary, but at least some professionals have testified that he was under the influence of alcohol. And this was even at a time when he was at the police station, sometime later, after the incident.
>
> "Many people do things and say things they wouldn't otherwise do or say when under the influence of alcohol. There's a fine line between an act creating a strong and plain likelihood that death or grievous harm will follow and an act which involves a high degree of likelihood that substantial harm will result to another.

"It is my judgment that the defendant did not intend to kill anyone; that his actions arose out of, and were as a result of, his use of alcohol, and that there was no malice. In short, I conclude that the defendant acted in a reckless or wanton manner, rather than out of malice, and, indeed, as his lawyer said, it was stupid."

After ruling on the motion, the judge proceeded to accept the guilty plea, and the new sentence was imposed.

Once the defendant was convicted by a jury of murder, the judge had no authority, absent the allowance of a motion for a new trial or the Commonwealth's consent, to accept a plea on the same indictment to a lesser offense. See *United States v. Gray*, 448 F.2d 164, 168-169 (9th Cir. 1971); *United States v. Edmonson*, 792 F.2d 1492, 1497, 1498-1499 (9th Cir. 1986). The decision whether to prosecute a defendant and what crime to charge are matters within the discretion of the prosecutor. This is true before a conviction. Certainly it must be true after a conviction as well.

The Commonwealth argues on appeal that the judge invoked rule 25(b)(2) after the improper plea colloquy for the purpose of validating the plea proceedings and with a predisposition to effectuate a manslaughter conviction. The Commonwealth also suggests that, having failed to decide the rule 36 motion, as he should have, and having made errors during trial, the judge was motivated in his posttrial rulings by a desire to avoid appellate review and to avoid having to decide the rule 36 motion. We decline to engage in speculation as to the judge's possible motives. Whatever the motivation was for the judge's unusual attempt to accept a plea after the defendant's murder conviction, we regard that attempt as a nullity. The judge's explanation of the reasons for his exercise of discretion under rule 25(b)(2) to reduce the verdict to manslaughter indicates that he gave the matter serious thought, that his attention was focused on the proper concerns, and that his consideration of the motion was independent of, and unaffected by, either the improper plea proceedings or the incomplete rule 36 hearing.

2. *The judge did not abuse his discretion in reducing the verdict.* The judge, who observed the witnesses during the lengthy trial, stated his reasons for acting on the motion. He believed that the defendant was intoxicated, that he did not intend to kill anyone, and that he acted in a reckless and wanton manner and not out of malice. In concluding that there was an absence of intent to kill, the judge apparently believed, in addition, the evidence that the defendant was a considerable distance away from the building when he shot the rifle and that he was aiming at the roof. It is true, as the Commonwealth points out, that the victim of the shooting did not act aggressively as did the victims in many of the reported cases in which murder verdicts were reduced. The judge, however, had in mind the offense of involuntary manslaughter, based upon reckless and wanton conduct, and not voluntary manslaughter. See *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 747 (1975).

The fact that the combined evidence of the Commonwealth witnesses warranted a verdict of murder would not prevent a judge, in the interest of justice, from reducing a verdict to manslaughter. The same considerations guide trial judges in reaching such decisions as guide the Supreme Judicial Court in considering whether to reduce verdicts under G. L. c. 278, § 33E. See *Commonwealth* v. *Gaulden*, 383 Mass. 543, 553-555 (1981). In reviewing a judge's decision to reduce a verdict to that of a lesser included offense, "we consider only whether the judge abused his discretion or committed an error of law." *Id.* at 557. See *Commonwealth* v. *Keough*, 385 Mass. 314, 319 (1982); *Commonwealth* v. *Zitano*, 23 Mass. App. Ct. 403, 408 (1987). Although a trial judge's power under Mass.R.Crim.P. 25(b)(2) to reduce the verdict should be used sparingly, it is "exceedingly rare" that an appellate court will set aside an exercise of discretion. *Commonwealth* v. *Cinelli*, 389 Mass. 197, 204-205 (1983), quoting from *Hartmann* v. *Boston Herald-Traveler Corp.*, 323 Mass. 56, 61 (1948). See *Commonwealth* v. *Millyan*, 399 Mass. 171, 188 (1987); *Commonwealth* v. *Maillet*, 400 Mass. 572, 579-

Commonwealth *v.* Greaves.

580 (1987). Whether or not we would have reached the same decision, we conclude there was no abuse of discretion.

*Judgment affirmed.*