COMMONWEALTH *vs.* STACEY HARRIS.

No. 89-P-170.

Middlesex. January 11, 1990. - June 27, 1990.

Present: BROWN, DREBEN, & KASS, JJ.

Further appellate review granted, 408 Mass. 1101 (1990).

*Homicide. Jury and Jurors. Practice, Criminal*, Challenge of jurors, Judicial discretion, New trial, Conduct of prosecutor. *Evidence*, State of mind.

The judge at a criminal trial properly exercised his discretion in determining that the prosecutor did not improperly use a peremptory challenge to exclude a juror on account of the juror's race. [725-729] BROWN, J., dissenting.

Where there was ample evidence of malice presented at the trial of an indictment for first degree murder, the judge properly denied the defendant's posttrial motion to reduce the verdict from second degree murder to manslaughter, or for a new trial. [729-731]

The judge at a criminal trial correctly concluded, after a hearing, that there was no juror misconduct or exposure of a juror to extraneous influence which affected the juror's impartiality; thus he properly denied the defendant's motion for a new trial based on those grounds. [731]

In light of the evidence presented at the trial of a murder indictment and the judge's particularly strong admonition that the jury should decide the case on the facts and not on sympathy, no reason appeared to warrant granting the defendant's motion for a new trial based on the prosecutor's allegedly improper opening remarks, the prosecution's calling the victim's father as a witness, or a victim advocate's having sat in the courtroom with the victim's mother. [732-734]

No error appeared at a murder trial by reason of the judge's ruling admissible certain evidence bearing on the victim's state of mind. [734-735]

INDICTMENT found and returned in the Superior Court Department on March 12, 1987.

The case was tried before *Paul A. Chernoff*, J., and postconviction motions were heard by him.

*Willie J. Davis* for the defendant.

*Judy G. Zeprun*, Assistant Attorney General, for the Commonwealth.

DREBEN, J. A Northeastern University student, Ignatio St. Rose, was stabbed to death after a fraternity party at the Massachusetts Institute of Technology. The defendant was charged with murdering the victim and, after a jury trial, was convicted of murder in the second degree.

In these appeals from his conviction and from the denial of his motion, under Mass.R.Crim.P. 25 (b)(2), 378 Mass. 896 (1979), for the entry of a verdict of guilty of manslaughter or for a new trial, the defendant makes the following claims: (1) the prosecutor, in violation of art. 12 of the Declaration of Rights of the Massachusetts Constitution and of the equal protection clause of the United States Constitution, used a peremptory challenge to exclude a black woman from the jury solely because of her race; (2) the trial judge abused his discretion in denying the defendant's rule 25(b)(2) motion that a finding of guilty of the lesser charge of manslaughter be entered; (3) the defendant is entitled to a new trial because extraneous matters affected a juror's decision; (4) impermissible conduct of the prosecutor created a substantial possibility that the verdict was influenced by sympathy for the family of the victim; and (5) a certain hearsay statement was improperly admitted in evidence and was so prejudicial that a new trial is required. We affirm the defendant's conviction and also the denial of his motions for the entry of a finding of guilty of a lesser offense and for a new trial.

1. *Peremptory Challenge.*

During the empanelment of the jury, the prosecutor used one of his peremptory challenges to exclude a black woman. The defendant's counsel objected, pointing out that she was the only black person on the panel. The judge asked the prosecutor for his reasons. The latter responded as follows:

> "First of all, Your Honor, I would note that this is not a black on white crime. . .[both the victim and the defendant were black] She reminds me, frankly, of the defendant's mother who collapsed hysterically at the arraignment and I assume will be here continually through the trial. I'm just afraid that that would affect her ability — the resemblance that I find between her

and the mother would affect her ability to sit impartially. She is also from Cambridge and there is going to be a young woman I understand is going to testify for the defense from Cambridge. Even though she says she does not know her, I'm afraid she might tend to believe that woman more who is going to represent a different view of the evidence, I assume a different view of the evidence, than witnesses who are going to be called on behalf of the Commonwealth.

"There is certainly no pattern of challenging jurors because of race. It's the only black on the panel at this point."

The defendant objected on the grounds that, despite the prosecutor's disclaimers, the only reason for the challenge was that the woman was black. He said, "the only resemblance [to the defendant's mother] is that she's black," and the witness from Cambridge also is black. The only reason "you think this [juror] might relate to her [is] because [the witness is] black."

The judge ruled:

"I'm not going to prevent the challenge. It's not a pattern. I think it's unfortunate that the one black juror isn't — one black potential juror won't end up sitting as a juror on this particular case. I think that's regrettable, but there is not a pattern and the government submits sufficient reason that I don't think that I should bar the peremptory challenge. It should only be done under certain carefully articulated circumstances. As I say, I feel it's unfortunate, but I'm not in a position to block it."

On the next day of trial — the jury had not yet been sworn — the prosecutor informed the judge that although the Commonwealth's position was that the peremptory challenge was exercised with appropriate reasons, he would not object to a request that the judge, in his discretion, discharge the jury and begin again simply to avoid any appearance of impropriety. The defendant rejected the offer "for the simple

reason that there is no guarantee that a new panel will produce any blacks, considering the situation in Middlesex County." The judge put on the record that he had ruled in the lobby that he would not start a fresh empanelment. While expressing his "personal regret that . . . the one individual who was black was excluded though a peremptory challenge," he was "satisfied" with the Commonwealth's reasons.

> "One of the reasons was the Commonwealth desired to strike individuals who lived in Cambridge. I carefully monitored the Commonwealth's challenges during the empanelment process, and all but one Cambridge person were in fact challenged by the Commonwealth. For those reasons, as I said, I'm not going to interfere with the process."

In this appeal, the defendant argues that no other reason but race explains the prosecutor's challenge. He points to the fact that, when the jury were finally selected, the panel included a white male who lived in Cambridge, another who worked there, and two female jurors of the approximate age of the defendant's mother. Moreover, he claims that the judge incorrectly thought, because only one juror was involved, that he had no authority to require the prosecutor to rescind the challenge as there was no evidence of a pattern of discrimination.

The judge's remarks, which we have quoted at length, show that he rejected a finding that the prosecutor was challenging the juror solely on the ground of her "group membership." See *Commonwealth* v. *Soares*, 377 Mass. 461, 490 (1979), cert. denied, 444 U.S. 881 (1979). He was satisfied that a neutral reason was legitimately proffered and he monitored the other challenges to potential members of the jury. All Cambridge residents except one were excluded. Contrast *People* v. *Hall*, 35 Cal. 3d 161, 168-169 (1983). Although

the judge referred to the absence of a pattern,[1] this is not a case where "a single invidiously discriminatory governmental act" was "immunized" by the absence of "a consistent pattern." See *Batson* v. *Kentucky*, 476 U.S. 79, 95 (1986).

Both the *Soares* and *Batson* opinions expressed confidence in the ability of trial judges to decide: (1) if there is a prima facie case of discrimination, *Soares*, 377 Mass. at 490; *Batson*, 476 U.S. at 97, in other words whether the presumption of the propriety of the peremptory challenge has been rebutted; and (2) whether there is a neutral explanation for the challenge pertaining to the individual qualities of the prospective juror. See *Soares*, 377 Mass. at 491; *Batson*, 476 U.S. at 98 and n. 21, but see *Batson*, at 103-104, Marshall, J., concurring. We must, therefore, give deference to the judge's decision. Although other judges might have reached a different conclusion or might have questioned the prosecutor more fully, we find no abuse of discretion here.[2] "Sorting out whether a permissible or impermissible reason underlies a peremptory challenge is the function of the trial judge, and we do not substitute our judgment for his if there is support for it on the record." *Commonwealth* v. *Legendre*, 25 Mass App. Ct. 948, 949 (1988), quoting from *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 552 (1981).

We acknowledge the dissent's position that not very strong reasons seem to make the grade. See, e.g., *Commonwealth* v. *Lattimore*, 396 Mass. 446, 448 (1985), *S.C.*, 400 Mass. 1001 (1987) (peremptory challenge upheld "based on the fact that the juror was wearing a gold earring and the prosecutor did

---

[1]As indicated in *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 553 (1981), "[w]hile . . . a pattern is an earmark of improper use of peremptory challenges, we are not prepared to say it is an essential ingredient. If exclusion of a discrete population group from a jury for no better reason than membership in such group violates art. 12 of the Declaration of Rights of the Massachusetts Constitution, the dismissal of the only member of the banished group is as repugnant to the Declaration of Rights as the dismissal of all but one member of the target group."

[2]It is also significant that the defendant rejected the remedy suggested in *Soares*, 377 Mass. at 491, "dismissing the jurors already selected, quashing the remaining venire, and starting anew." *Commonwealth* v. *Hutchinson*, 395 Mass. 568, 572 (1985).

not 'like his looks' ''). A better rule might require a ground that would "approximate" a challenge for cause once an objection based on race is made to a peremptory challenge. The present law, however, is otherwise. Both the United States Supreme Court and the Supreme Judicial Court have held that the reasons need not approximate the grounds required by a challenge for cause. *Soares*, 377 Mass. at 491. *Batson*, 476 U.S. at 97.

2. *Rule 25(b)(2) Relief.*

The defendant recognizes that his motion for either the entry of a finding of guilty of manslaughter or for a new trial on the ground that the verdict of second degree murder was against the weight of the evidence is a matter presented to the sound discretion of the trial judge. As pointed out in *Commonwealth* v. *Woods*, 382 Mass. 1, 8 (1980), "A trial judge's response to a new trial motion based on weight is understood to be discretionary. This entails the possibility that there may be such an abuse of discretion in a denial that an appellate court should correct the mistake on appeal [citation omitted]. Yet, granted that the possibility exists, 'it has repeatedly been stated that occasions when this court can do so' — set aside the action of the trial judge in refusing a new trial — 'are exceedingly rare.' *Hartmann* v. *Boston Herald Traveler Corp.*, 323 Mass. 56, 61 (1948)."[3]

An examination of the evidence indicates that this is not the rare case. Inside the building, during the party, an argument erupted about taking a photograph. Angry words were exchanged and the defendant produced a knife. A number of persons were escorted outside the building and the defendant was asked to leave. Thereafter, outside on a plaza, the defendant and others engaged in a fight during the course of which the defendant fatally stabbed the victim.

---

[3]While the Commonwealth is correct in asserting that this court may not review the facts on its own and set aside a verdict of guilty on the ground that it is against the weight of the evidence, *Commonwealth* v. *Riva*, 18 Mass. App. Ct. 713, 719 (1984), the question whether a trial judge has abused his discretion in ruling on a rule 25(b)(2) motion is reviewable by this court. *Commonwealth* v. *Greaves*, 27 Mass. App. Ct. 590, 594 (1989), and cases cited.

Although the defendant contended otherwise — he gave three different statements — there was substantial evidentiary support for the judge's determination that the defendant's leaving of the building could reasonably be seen as "a desire to create a physical confrontation . . . exacerbated by the fact that the defendant was apparently the only one armed with a deadly weapon" and that his "post stabbing conduct of . . . yelling repeatedly 'I got my man, I got my man' is not consistent with the type of remorse that might follow manslaughter." There was also evidence from four or five witnesses that, at the time the victim was stabbed by the defendant, the arms of the victim were being held by the defendant's companions. On this basis, the judge could well conclude that there was no reasonable apprehension of danger on the part of the defendant, see *Commonwealth v. O'Neil*, 382 Mass. 12, 13 (1980), and that he should not second-guess the jury. See *Commonwealth v. Millyan*, 399 Mass. 171, 188 (1987). Unlike *Commonwealth v. Woods*, 382 Mass. at 8-9, the present case is one "where much of the evidence is subject to discount for witness credibility" and the "opinion of the judge who has heard the testimony is highly significant."

The judge's denial of the defendant's motion was not an abuse of discretion. See *Commonwealth v. Gaulden*, 383 Mass. 543, 555-556 (1981). On the evidence, the judge was entitled to conclude that the "choice of a verdict of murder in the second degree as against a verdict of manslaughter was quite understandable and reasonable." *Commonwealth v. O'Neil*, 382 Mass. at 13. As there was ample evidence of malice, see *Commonwealth v. McGuirk*, 376 Mass. 338, 345 (1978), cert. denied, 439 U.S. 1120 (1979), the verdict was consonant with justice. That the judge commented that had he been the trier of fact, "it is possible that [he] might have harbored sufficient doubt to justify a manslaughter conviction over one of second degree murder" does not suggest an

abuse of discretion in denying the defendant's motion for a new trial or a reduction in the verdict.[4]

3. *Alleged Extraneous Matter Influencing a Juror.*

During the trial, juror No. 8 reported to a court officer that she had seen the defendant in a car, that he had motioned her to cross the street and that she was nervous over the incident. The trial judge was informed and he in turn notified both counsel of this matter. Defense counsel interviewed the defendant and corroborated the encounter. Neither counsel wished further inquiry of the juror.

After the verdict was rendered and the judge had thanked the jurors for their service, juror No. 8 told the judge "that she was concerned that seeing the defendant on the street had made her nervous and that she did not know if it affected her decision." The judge told the juror to go home, but informed counsel of her statement. Although both counsel thought no hearing should be held, the judge conducted a postverdict interview of the juror in counsels' presence. The juror stated that her verdict was based on the evidence presented at trial, but that she felt nervous about possible future repercussions.

The trial judge made comprehensive findings on this issue and concluded that "there was neither juror misconduct nor exposure to a disturbing extraneous influence which affected the impartiality of the juror." The record amply supports his findings and we agree with his conclusion. The judge could properly rely on the juror's statement that her verdict was based on the evidence. See *Commonwealth* v. *Gregory*, 401 Mass. 437, 444 (1988). There was no error in the denial of a new trial on this ground.

---

[4]The defendant points to some errors in the judge's recitation of the evidence. The judge's action on the rule 25(b)(2) motion preceded preparation of the trial transcript (consisting of fourteen volumes). After review of the transcript, we have no doubt that had the judge had the transcript, his ruling would have been the same and it would have been upheld by the panel of this court.

4. *Alleged Prosecutorial Misconduct in Generating Sympathy for the Victim and his Family.*

In urging that the jury verdict may have been influenced by sympathy for the victim and his family created by impermissible conduct by the prosecutor, the defendant claims that there were three instances in which the prosecutor improperly attempted to generate sympathy: (a) in his opening statement, (b) in putting the victim's father on the stand to identify the victim when identification was not an issue; and (c) in having a member of the district attorney's victim-witness staff sit with the victim's family and hold the victim's mother's hand.

a) *Opening statement.* In his opening statement, the prosecutor stated that the victim did not know what was going on when he went outside and repeated this by saying, "And poor Ignatio St. Rose didn't really know what was going on." The defendant claims that these statements were not correct because the victim knew what was going on and had been told not to go outside. Although at trial there was evidence of the victim's knowledge of the incident at the time he went outside, the evidence is not so clear as the defendant urges. There was evidence that the victim was not involved in the initial confrontation inside the party and there was some testimony that he had not been present during the group's discussion of the incident. Thus, there was in fact, evidence from which an inference can be drawn that the victim did not know what had happened. In any event, there is nothing to indicate that the prosecutor acted in bad faith in attempting to show lack of knowledge by the victim. "As a general rule, counsel is free to state in his opening anything he expects to be able to prove by evidence. If the expected testimony does not materialize, it will not be presumed that the prosecutor acted in bad faith." *Commonwealth* v. *Breese,* 381 Mass. 13, 15-16 (1980). There was no error in not granting a mistrial as requested by the defendant based on the prosecutor's opening argument.

Moreover, the jury were informed by the judge prior to the prosecutor's opening that nothing the lawyers say "consti-

tutes evidence in the slightest." They were again instructed, in the judge's charge, that the arguments of counsel were not evidence. The judge also gave a particularly strong admonition that the jury should decide the case on the facts and not on sympathy.[5] See *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 424 (1978). See also *Commonwealth* v. *Francis*, 391 Mass. 369, 373 (1984).

b) *Victim's father as witness.* As identification was not an issue, the defendant contends that the prosecutor's sole purpose in calling the victim's father as a witness was to generate sympathy for the victim's family. He claims that the background information supplied by the father could have been given by percipient witnesses and that this witness should not have been allowed to testify over the defendant's objection. "The Commonwealth [however] has a right to try its case in its own way so long as it engages in no calculated impropriety." See *Commonwealth* v. *Andrews*, 403 Mass. 441, 451 (1988); *Commonwealth* v. *Easterling*, 12 Mass. App. Ct. 226, 228 (1981). There was here no showing of "calculated impropriety" within the meaning of *Commonwealth* v. *Andrews*, *supra*.

c) *Presence of victim advocate.* During the trial the victim advocate sat with the victim's mother and on at least one

---

[5]The judge stated:

"Now, in many cases in court there is an element of sympathy which surrounds the trial. Whenever there is a tragedy where somebody ends up as a deceased individual there is sympathy. When somebody is charged there is sympathy. We noticed here in the course of the trial there are people who are friends and family of the deceased in this case, friends and family of the defendant here, and obviously, the proceedings here and what happened almost a year ago have had a profound effect on both families. And it may well be that both families are deserving of a great deal of sympathy, but not by a jury and not by a Court, because sympathy is grounded in emotion and a jury must consider only facts, and you must put sympathy aside. And you all know that this would be a pretty sad world without sympathy, but sympathy does not have a place in the courtroom. Even more importantly, sympathy does not have a place in the jury room. You must go back, you must decide the case on the basis of the facts as you find them, disregarding emotion. You must focus on facts and facts alone."

occasion, maybe more, held her hand. The defendant objected to her handholding after the prosecutor's opening. Although the judge said he would deal with the matter later on, he did not. Defense counsel renewed his objection at the end of the trial by moving for a mistrial on this ground.

The judge found that "[i]t would have been apparent to the jury that the victim advocate was affiliated with the office of the district attorney." If the victim advocate is to perform her or his salutory duties without prejudice to the defense, an effort should be made to keep the advocate's official status under wraps. As stated by the judge, her handholding was "unfortunate and avoidable." Nevertheless, in view of the evidence presented at trial and the particularly strong instructions on sympathy, see note 5, *supra*, we think this could not have affected the verdict.

5. *Hearsay Statement.*

One of the students at the party, Sherea McLaughlin, told the victim that some of the persons were "getting ready to get into a fight." He asked where they were. She told him they went outside and told him not to go outside. Over the defendant's objection the prosecutor was permitted to ask her: "And did you tell him not to go outside because they might be carrying?" [6] Her answer: "Yes."

The witness had not seen the knife. Hence her information was derived from other sources. The defendant argues that since the witness knew the defendant from living in his neighborhood, the statement would reflect on his bad character as "it would convey to the jury that, even though the witness had not seen the knife, she knew the defendant carried one."

The prosecutor argued to the judge that the thrust of the defendant's case was that the victim, rather than the defendant, ran outside to initiate combat. McLaughlin's testimony that the defendant or his group was "carrying" was offered to show the victim's state of mind — he would be unlikely to run out and start a fight with someone who had a knife. We

---

[6]The defendant takes this statement to mean carrying a knife.

think the judge, in his discretion, did not err in admitting the evidence which bore on the victim's state of mind.[7]

In any event, we do not think the testimony could have affected the verdict. There was ample evidence that the defendant had a knife and there was also evidence, other than McLaughlin's statement, that the victim knew that fact. Her testimony, even if it reflected on the defendant's character, was insignificant in view of the evidence at trial.

*Judgment affirmed.*

*Order denying motions for a new trial or other relief affirmed.*

BROWN, J. (dissenting). I dissent from part 1 of the majority opinion. Because of the prosecutor's shameful and flagrant misuse of the peremptory challenge to exclude a juror solely on the basis of race, the defendant did not receive a fair trial. I am shocked that in this day and age (long after the noted trilogy of cases in this area[1]) prosecutors are still challenging persons peremptorily for no reason other than their ethnicity. See, e.g., *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 293-295 (1981). This is improper and immoral, apart from being unconstitutional.[2]

The flimsy excuses[3] offered here were so transparent that the prosecutor, obviously embarrassed, later attempted to rectify what he seemed to acknowledge as error by sug-

---

[7]The defendant declined to have the judge instruct the jury that the evidence was limited to the state of mind of the victim.

[1]See *Commonwealth* v. *Soares*, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979); *Commonwealth* v. *Sanders*, 381 Mass. 637 (1981); *Commonwealth* v. *Hobbs*, 385 Mass. 863 (1982).

[2]The same, of course, holds true for the use of peremptory challenges to eliminate potential jurors based solely on gender. See *Commonwealth* v. *Allen*, 379 Mass. 564, 576 (1980); *Commonwealth* v. *Reid*, 384 Mass. 247, 253 (1981).

[3]For a well crafted opinion exposing the usual disingenuous responses of counsel when asked to show some basis other than race or sex for the exercise of peremptory challenges, see *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 551-552 (1981).

gesting to the judge that it might be prudent to "discharge the jury and begin again.[4] The question to be asked is, *Why did the prosecutor do it*? If prosecutors want trials to be fair, should not they, as well as defense counsel, try to get it right *the first time*? It should be the aim of all to strive earnestly to produce as close to an impeccable trial as is possible.[5] See *Commonwealth* v. *Bodden*, 24 Mass. App. Ct. 135, 141 (1987) (Brown, J., concurring). Cf. *Townsend* v. *Sain*, 372 U.S. 293 (1963).

Let me conclude with a notion discussed by the Supreme Judicial Court in *Commonwealth* v. *Soares*, 377 Mass. 461, 491, cert. denied, 444 U.S. 881 (1979), and mentioned by the majority here today. When defense counsel raises an objection based on ethnicity or gender to the prosecutor's exercise of one[6] or more peremptory challenges, the trial judge should be required to perform a more searching review of the prosecutor's reasons than is required at present, see *Commonwealth* v. *Brown*, 11 Mass. App. Ct. at 292-295, otherwise prosecutors will be "free to discriminate against blacks in jury selection provided that they hold that discrimination to an 'acceptable' level." *Batson* v. *Kentucky*, 476 U.S. 79, 105 (1986) (Marshall, J., concurring). The trial judge should require that the prosecutor's grounds approximate or be the same as those needed to sustain a challenge for cause. See Brown, McGuire & Winters, The Peremptory Challenge as Manipulative Device in Criminal Trials: Traditional Use or Abuse, 14 New England L.Rev. 192, 235 n.244 (1978). See

---

[4]Appellate counsel usually recharacterize such an error of the prosecutor as a "regrettable misstep."

[5]This impassioned plea for prosecutors to steer clear of unnecessary error and to *strive* for a fair trial has been made on more numerous occasions than space will permit me to catalogue. For a representative sample, see *Commonwealth* v. *Paiva*, 16 Mass. App. Ct. 561, 563 (1983); *Commonwealth* v. *Kozec*, 21 Mass. App. Ct. 355, 366 (1985) (Brown, J., concurring); *Commonwealth* v. *Young*, 22 Mass. App. Ct. 452, 457 (1986) (Brown, J., concurring); *Commonwealth* v. *Bodden, supra.*

[6]This court in *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 553 (1981), in language quoted in note 1 of the majority opinion, took a more realistic view of the state of affairs. For another illustration, see *Commonwealth* v. *Clark*, 378 Mass. 392, 407-408 n.17 (1979).

also *id.* at 233 n.236. Compare *Batson* v. *Kentucky*, 476 U.S. at 107-108. (Marshall, J., concurring). If we do not make this the test,[7] we will be left with a process whereby blacks are routinely excluded from juries based upon what even a dissenting Supreme Court Justice in *Batson* conceded were at best "crudely stereotypical and . . . in many cases . . . hopelessly mistaken" instincts. 476 U.S. at 138 (Rehnquist, J., dissenting). Justice Marshall said it best: "[T]rial courts face the difficult burden of assessing prosecutor's motives. . . . Any prosecutor can easily assert facially neutral reasons for striking a juror, and trial courts are.ill-equipped to second-guess those reasons" (citations omitted).[8] *Id.* at 105-106 (Marshall, J., concurring). For a case in point, see *Commonwealth* v. *Kelly*, 10 Mass. App. Ct. 847 (1980) (explanation based on prospective juror's "demeanor, manner and the 'smirk on her face' " found to be "an acceptable reason").

---

[7]The present test, as the majority acknowledges, permits a trial judge to accept as valid (i.e., not merely based on ethnicity or gender) explanations so flimsy as that counsel did not like the prospective juror's "looks." *Commonwealth* v. *Lattimore*, 396 Mass. 446, 448 (1985). See also *Batson* v. *Kentucky*, 476 U.S. at 105 (Marshall, J., concurring), where Justice Marshall points out the limitations of the Massachusetts approach, citing *Commonwealth* v. *Robinson*, 382 Mass. 189, 195 (1981).

[8]Justice Marshall's warning and fears found tangible form in the 4-4 affirmance of a conviction by an all-white jury in *Tompkins* v. *Texas*, 490 U.S. 754 (1989), aff'g 774 S.W. 2d 195 (Tex. Crim. App. 1987). The dispute in that case concerned whether the government's explanations for three peremptory challenges were neutral and case-related. Query, what is it about the racial relationship of blacks and whites in this society that causes such fear that blacks would be unwilling to do justice when the proof supports charges such as those brought against the defendant in *Tompkins*? There, the defendant, a black man, kidnapped the victim, a white person, robbed her of her automated bankteller card, tied her to a tree, and gagged her with a cloth, causing her death by suffocation. See also the landmark case of *Swain* v. *Alabama*, 380 U.S. 202 (1965), where the crime was equally heinous.